**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number:  **20-01791-jw**

# ORDER

The relief set forth on the following pages, for a total of 30 pages including this page, is hereby ORDERED.

---

**FILED BY THE COURT**
**10/22/2020**



US Bankruptcy Judge
District of South Carolina

Entered: 10/22/2020

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 20-01791-JW |
| | Chapter 13 |
| Bradley Christopher Hamrick, | **ORDER** |
| Debtor(s). | |

   This matter comes before the Court on the Objection to Claim of Memorie Beth Cole filed by Bradley Christopher Hamrick ("Debtor" or "Husband") on July 28, 2020.  Memorie Beth Cole a/k/a Memorie Beth Hamrick ("Ms. Hamrick" or "Wife") did not file a response to the Objection as required by the Notice of Objection.   Nevertheless, the Court conducted a hearing on the Objection to Claim on September 10, 2020. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G). Pursuant to Fed. R. Civ. P. 52, which is made applicable to these proceedings by Fed. R. Bankr. P. 7052 and 9014(c), the Court makes the following findings of fact and conclusions of law:[1]

## BACKGROUND

   Debtor and Ms. Hamrick were married in 2002 and have two minor children together.  For the majority of their marriage, Debtor and Ms. Hamrick lived in North Carolina.  In February of 2013, upon Debtor's return from a tour of duty in Afghanistan, Ms. Hamrick notified Debtor that she wanted to end their marriage. After separating for a period of time, Ms. Hamrick and Debtor executed a Separation Agreement and Property Settlement ("Settlement Agreement") in contemplation of divorce. Ms. Hamrick signed the Settlement Agreement on April 1, 2014 in the presence of a notary in Florida, while Debtor signed the Settlement Agreement on April 12, 2014

---

[1]   To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such, and vice versa.

in the presence of a notary in Tennessee.  The Settlement Agreement purports to set forth the

parties' complete agreement regarding child support, spousal support and alimony, property

division and other marital issues.[2] The Settlement Agreement provides that "[j]urisdiction and

interpretation of this Agreement shall be in accordance with North Carolina law."  The Agreement

was prepared by an attorney employed by Debtor for a $500 fee and was based upon the

negotiations of the parties.  Ms. Hamrick elected not to obtain her own attorney to represent her in

connection with negotiating the terms of the Settlement Agreement or pursuing the divorce and

expressly waived her right to representation in the Settlement Agreement.[3] The Settlement

Agreement was not incorporated into the Judgment of Absolute Divorce entered by the North

Carolina Court for Cleveland County on June 10, 2014 nor any other order of any other court.[4]

Pursuant to North Carolina law, an unincorporated separation agreement is considered to be and

is enforceable as a contract. *Lasecki v. Lasecki,* 809 S.E.2d 296, 302 (N.C. Ct. App. 2017).

On March 18, 2020, Ms. Hamrick filed a lawsuit against Debtor in the Circuit Court in

Okaloosa County, Florida ("Florida State Court"), seeking an award of child support,

reimbursement of medical/dental expenses, provision of medical/dental insurance, life insurance

to secure child support, attorney's fees, establishment of a parenting plan to determine custody and

time sharing of children, amendment of a trust established on behalf of their daughter, rescission

---

[2]     The Settlement Agreement includes a statement, agreed to by Debtor and Ms. Hamrick, that "both parties fully understand the terms, conditions, and provisions of this Agreement, believe and agree that same are just, fair, adequate and reasonable in all respects."
[3]     The Settlement Agreement provides that:
        Wife understands and acknowledges that this Agreement was drawn by Husband's attorney, Leslie A. Farfour, Jr., and that the said Leslie A. Farfour, Jr., could not give the Wife legal advice as there may reasonably be a conflict of interest between Husband and Wife.  Wife further understands that it might be in her best interests to have an attorney of her own choice to review this Separation Agreement and Property Settlement for the purpose of advising her with respect to her rights and obligations before and after the execution of this Agreement, but that Wife, by her signature hereto, does specifically waive that right.
[4]     There was no provision in the Settlement Agreement providing for incorporation of the Settlement Agreement into the Judgment of Absolute Divorce.

2

of the marital settlement agreement, division of marital property, including Debtor's military retirement, establishment of alimony/spousal support, unjust enrichment, constructive fraud by breach of fiduciary duty, and three separate claims for conversion. On that same date, Ms. Hamrick filed a petition in the Florida State Court seeking domestication of the North Carolina Judgment of Divorce. Prior to that action and despite Ms. Hamrick's allegations that Debtor failed to perform several of the terms of the Settlement Agreement and committed fraud in inducing her to enter the agreement, Ms. Hamrick did not assert any claim in any court against Debtor related to the Settlement Agreement.

Debtor's Bankruptcy Case & Ms. Hamrick's Proof of Claim

On April 14, 2020, Debtor, while a resident of South Carolina, filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code in this Court. On May 7, 2020, Ms. Hamrick filed a proof of claim, asserting a priority claim for a domestic support obligation under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B), based upon her Complaint filed on March 18, 2020, in an amount to be determined by the Florida State Court. On its face, Ms. Hamrick's proof of claim provides vague and inconsistent information regarding the basis of the claim. For example, Section 7 and 8 of her proof of claim state that the basis of the claim is "Breach of Contract, Spousal Support, Child Support, and Fraud" in an undetermined amount. In the following section, the proof of claim states that it is a secured claim in the amount of $67,444.50, secured by real estate. The claim also does not specify which property owned by Debtor secures the claim. The claim further indicates that the amount claimed includes interest and other charges, but does not attach a statement itemizing interest, fees, expenses, or other charges as required by Fed. R. Bankr. P. 3001(c)(2)(A). To support her priority, secured claim, Ms. Hamrick attached copies of the following documents to the Proof of Claim: the Florida State Court complaint, an unsigned copy of the Settlement

3

Agreement, the Judgment of Divorce, and a letter sent to Debtor by Ms. Hamrick's Florida state court lawyer on October 27, 2019, which notifies Debtor that Ms. Hamrick is asserting that he has materially breached the Settlement Agreement and is pursuing all available remedies under the law.

No evidence of perfection of any security interest in property of Debtor is attached to Ms. Hamrick's Proof of Claim as required under Fed. R. Bankr. P. 3001(d). Ms. Hamrick's claim appears to be specifically based on her assertions in the Florida State Court Complaint.[5] At the time of the filing of her Proof of Claim, Ms. Hamrick was being represented in her domestic action by a Florida attorney. Nevertheless, she elected to prepare and file her proof of claim *pro se*, later advising the Court that she had limited resources. By filing her Proof of Claim, Ms. Hamrick has submitted to personal and subject matter jurisdiction of this Court. *See In re Coulter*, 305 B.R. 748, 759 (Bankr. D.S.C. 2003) (holding that by filing two proofs of claim, the creditor submitted to the Bankruptcy Court's jurisdiction).

<u>Adversary Proceeding</u>

On July 24, 2020, Debtor filed an adversary proceeding in this Court, which addresses each of the allegations of the Florida Complaint and seeks a declaratory judgment that Debtor is current on all monetary and support related obligations under the Settlement Agreement, that many of the allegations of the Complaint should be dismissed or found to be claims that are dischargeable, unsecured and nonpriority debt, and that certain of Ms. Hamrick's actions constitute violations of the automatic stay. The Summons and Complaint were properly served, and Ms. Hamrick filed a

---

[5]     Ms. Hamrick, by separate document filed on June 15, 2020, also requested relief from stay to litigate all issues related to the Complaint in Florida.

*pro se* answer on August 27, 2020, thereby submitting herself to the jurisdiction of this Court.[6]

The Court entered a scheduling order on September 28, 2020 setting forth deadlines for discovery

and motions.

Debtor's Objection to Claim of Ms. Hamrick

On July 28, 2020, Debtor filed the Objection to Claim and served Ms. Hamrick with Notice

of the Objection to Claim. The Notice required Ms. Hamrick to serve any written response within

30 days of service of the Notice and provided that if no response was filed, no hearing would be

held on the Objection to Claim, except at the direction of the judge.[7] Although it appears from the

Certificate of Service filed on the record that Ms. Hamrick was properly served with Notice of

Debtor's objection to her claim at the address provided for notice on her Proof of Claim, Ms.

Hamrick did not file a response.  Ms. Hamrick's claim is restricted to the Proof of Claim she filed

in this case.  She made no request to amend her claim prior to the hearing on the Objection to

Claim.  Even if the Court were to view the Proof of Claim liberally, the Court herein has considered

Ms. Hamrick's causes of action as framed in her Florida Complaint.

Interim Stay Relief Order

The Court granted partial relief from stay by Order entered July 29, 2020 ("Interim Stay

Relief Order"), which allowed Ms. Hamrick to "proceed in an appropriate state court to seek an

order establishing child support and to determine custody and visitation, which are not matters

---

[6]       On September 30, 2020, Ms. Hamrick filed a Motion to Amend Answer to Complaint.  Her proposed
Amended Answer includes a counterclaim against Debtor for breach of contract.  This Motion has not yet been heard
by the Court.

[7]       The Notice of Objection to Creditor's Claim did not follow the Court's form hearing notice for Objections
to Claim in that it stated "[i]f you do not want *the court to Object to Creditor's Claim*, or you want the court to consider
your views on the Objection to Creditor's Claim, then within thirty (30) days of service of this notice, you or your
attorney must: File with the court a written response, return, or objection…." (emphasis added). The correct wording
on the form hearing notice in effect at the time Debtor filed the objection provides: "If you do not want *the court to
[relief sought in motion or objection]*, or you want the court to consider your views on the [objection] then within___
days of service of this notice, your or your lawyer must: File with the court a written response, return, or objection
…."

5

stayed by 11 U.S.C. § 362(b)." Based upon the parties' agreement, the Court stated in the Interim

Stay Relief Order that the hearings scheduled in Florida State Court on July 29, 2020 on the

following matters could occur: Ms. Hamrick's claims for child support, custody and visitation, the

Emergency Verified Motion for Child Pick-Up  and any necessary administrative determinations

related to the determination of child support and custody/visitation, such as the domestication of

the Judgment of Absolute Divorce and determination of jurisdiction under the Uniform Child

Custody Jurisdiction and Enforcement Act or the Uniform Interstate Family Support Act.  The

Court further ordered that payment of any child support awarded could only be authorized in

accordance with 11 U.S.C. § 362(b)(2) or by further order of this Court.  In addition, the Court

directed that all other matters raised by the Florida Court Complaint were stayed.

Florida Litigation Following Stay Relief Order

On August 26, 2020, the Florida State Court entered an order on Debtor's motion to dismiss

Ms. Hamrick's complaint.[8]  The Florida State Court denied Debtor's motion to dismiss the causes

of action seeking child support and establishment of a parenting plan.  The remaining claims,

including amendment of a trust, rescission of the Settlement Agreement, modification of the

military retirement benefits awarded to Ms. Hamrick and seeking spousal support or alimony for

Ms. Hamrick, unjust enrichment, constructive fraud by breach of fiduciary duty, and conversion

were dismissed, some with prejudice, for lack of subject matter jurisdiction, but the Florida State

Court suggested that Ms. Hamrick could pursue certain of the dismissed causes of action in

alternative state court forums.

---

[8]     On that same date, the Florida State Court also entered separate orders granting Debtor's Motion for Child
Pick-Up Order, granting without prejudice Debtor's Motion to Dismiss Count Three of Cole's Complaint for failure
to state a claim upon which relief can be granted, and denying Debtor's Motion to Dismiss Cole's Petition to
Domesticate Foreign Order.

## Second Order Regarding Relief from Stay

On October 7, 2020, this Court entered a further order on Ms. Hamrick's Motion for Relief from Stay, which stated that to the extent the Florida Court suggested that it permitted or directed Ms. Hamrick to commence or continue the dismissed actions in her Complaint in other jurisdictions or court divisions, such holdings were not permitted by the relief from stay order and therefore are void *ab initio* as being in violation of the automatic stay.

## Hearing on the Objection to Claim

Despite Ms. Hamrick's failure to respond to the Objection to Claim, which would allow relief to be granted against her, the Court set a definite hearing on the Objection to Claim for September 10, 2020, since there were other matters already scheduled to be heard in this case and its related adversary proceeding, of which the parties had notice, including a hearing on Ms. Hamrick's Motion for Relief from Stay, a hearing on confirmation of Debtor's chapter 13 plan, and a pre-trial conference in the adversary proceeding. In an Order entered on September 4, 2020, the Court indicated that the Proof of Claim filed by Ms. Hamrick lacked *prima facie* evidence of validity and amount due to its failure to meet the requirements of Fed. R. Bankr. P. 3001 and therefore stated that Ms. Hamrick bears the initial burden of proof to establish the validity and amount of her claim.

On September 9, 2020, Ms. Hamrick retained South Carolina counsel to represent her at the hearings on September 10, 2020, including the hearing on her Proof of Claim. On that same date, Ms. Hamrick's counsel filed motions to continue the hearings on September 10, 2020 in the bankruptcy case and adversary proceeding. At the hearing on September 10, 2020, the Court denied the request for continuance, finding that Ms. Hamrick had more than forty days' notice of

the hearings and that the parties had incurred substantial costs to appear in person at the hearing since they had both travelled from Florida.

During the September 10, 2020 hearing, the Court received testimony and evidence from both parties regarding Ms. Hamrick's claim. Debtor presented into evidence copies of bank records from 2015 through 2020 reflecting transfers of money to Ms. Hamrick. Ms. Hamrick also presented evidence of her bank statements from 2015 through 2020 indicating amounts received from Debtor during that period. The evidence indicates that from January of 2015 through August of 2019, Debtor consistently made payments equal to or exceeding $740 per month from January through May and August through December when the children were living with their mother, and made payments of $290 per month in June and July when the children were living with him for the summer, as required by the Settlement Agreement. In August of 2019, when the parties' son began residing full time with Debtor, Debtor's payments to Ms. Hamrick were reduced by half to $370 per month. Debtor made payments in the amount of $370 per month from August 2019 until April of 2020, at which point he began making payments to Ms. Hamrick in the amount of $290 per month. During the hearing, Ms. Hamrick testified generally that Debtor owed her more than she had received but she did not identify any specific missed payments by Debtor or offer a calculation of the total amount owed.

<u>Legal Standard for Claim Allowance</u>

Under 11 U.S.C. § 502(a), a proof of claim is deemed allowed unless a party in interest objects. If an objection is filed, the Court, after notice and a hearing, is required to determine the amount of the claim as of the date of the filing of the petition and allow such claim except to the extent it is not allowable under the grounds listed in 11 U.S.C. § 502(b). A proof of claim filed in accordance with Fed. R. Bankr. P. 3001 constitutes *prima facie* evidence of its validity and amount.

Fed. R. Bankr. P. 3001(f).  Rule 3001 sets forth the requirements for a properly filed proof of

claim, including the required forms, information, and supporting documentation requirements.  If

these requirements are not met, then the claim would not constitute *prima facie* evidence of its

validity and amount.  Upon objection from the debtor challenging the allowance of the claim under

11 U.S.C. § 502(b), the burden rests on the claimant to prove the validity and amount of her claim.

*In re Devey,* 590 B.R. 706, 721 (Bankr. D.S.C. 2018).

As held in the Court's September 4, 2020 Order, Ms. Hamrick's Proof of Claim lacks *prima*

*facie* evidence of validity and amount because it fails to meet all of the requirements of Fed. R.

Bankr. P. 3001.[9] *See* Fed. R. Bankr. P. 3001(f). As discussed above, the Proof of Claim contains

vague and inconsistent information as to the amount and basis of the claim and attaches an

unsigned copy of the Settlement Agreement in support of the claim.  Additionally, the claim

appears to be primarily based upon causes of action set forth in the Florida Complaint, which have

since been dismissed by the Florida State Court, except for the cause of action for child support

and custody/visitation which this Court expressly allowed to proceed in that forum.  Debtor has

objected to Ms. Hamrick's claim pursuant to 11 U.S.C. § 502(b) as unenforceable on the grounds

that (1) the claim is inaccurately characterized as a secured claim and (2) there is no evidence

attached to the claim demonstrating a pre-petition arrearage on a priority debt as required by 11

---

[9]      First, the claim indicates that the amount claimed includes interest and other charges but does not attach a
statement itemizing interest, fees, expenses, or other charges as required by Rule 3001(c)(2)(A). Additionally, the
claim indicates that $67,444.50 is secured, but does not attach evidence of perfection of a security interest in any of
Debtor's property as required by Rule 3001(d). Moreover, the Court notes that Ms. Hamrick did not list an amount in
her proof of claim. At least one court has suggested that proofs of claim "that list the amount of damages as 'unknown'
or 'unliquidated' would clearly seem to be incomplete" and may not be entitled to *prima facie* validity. *See In re Dow
Corning Corp.*, 2000 Bankr. LEXIS 1579 at *6 n.3 (Bankr. E.D. Mich. Nov. 3, 2000). That same court noted that
there is "a fair argument that a proof of claim seeking recovery for a disputed, unliquidated tort claim should, as a
general rule, not be afforded prima facie validity." *Id*. This Court questions how a claim may have *prima facie* evidence
as to the amount when the proof of claim lists the amount as "unknown" or "to be determined", especially considering
that the burden under state law is generally on the party asserting damages to prove the amount of such damages. *See,
e.g., Olivetti Corp. v. Ames Bus. Sys., Inc.*, 356 S.E.2d 578, 586 (N.C. 1987) (holding that the burden of proving
damages is on the party seeking the damages and that the party "must show that the amount of damages is based upon
a standard that will allow the finder of fact to calculate the amount of damages with reasonable certainty").

U.S.C. § 507(a).  Accordingly, the burden rests on Ms. Hamrick to prove her claim.[10]  *In re Devey,* 590 B.R. at 721.

Secured Claim

Debtor disputes Ms. Hamrick's characterization of her claim as secured, arguing that there is no evidence of a perfected security interest attached to the claim, the claim does not indicate what property secures the claim or the basis for its valuation, and the attachments contain no indication of a debt in the amount of $67,444.50.  Debtor further objects to the priority portion of Ms. Hamrick's Proof of Claim, asserting that Ms. Hamrick failed to provide evidence of a pre-petition failure to pay (arrearage) in child support and spousal support payments required under the Separation Agreement and failed to provide evidence that any arrearage would be subject to priority treatment in Debtor's Chapter 13 plan.

At the hearing on the Objection to Claim, Ms. Hamrick was provided with an opportunity to present evidence in support of her claim.  Although Ms. Hamrick represented herself *pro se* in the filing of her proof of claim and other documents prior to the hearing, she was represented by counsel at the hearing on the Objection to Claim.  Despite having skilled bankruptcy counsel, Ms. Hamrick did not present any credible evidence to support a secured claim.  Accordingly, the Court finds Ms. Hamrick's claim should be disallowed to the extent she asserts a secured claim. [11]

---

[10]    Even if Ms. Hamrick's claim were to meet the requirements for *prima facie* validity under Rule 3001(f), the Court finds that Debtor presented sufficient evidence to rebut the presumptive validity of her claim and shift the burden back to Ms. Hamrick to prove the amount and validity of her claim.  *See In re Harford Sands, Inc.,* 372 F.3d 637, 640 (4th Cir. 2004).

[11]    However, as discussed further below, the evidence presented indicates that Ms. Hamrick has an interest as a co-owner with Debtor in the North Carolina residence and may be entitled to one-half of the proceeds from any sale of the property after the payment of mortgage, liens, and closing costs.  Debtor testified that he believes there is no equity in the property and that he intends to surrender the property to the mortgage creditor, so no sale by Debtor is anticipated during his bankruptcy case.  Nevertheless, upon motion, the Court would consider granting relief from stay to allow Ms. Hamrick to take action to protect her one-half interest in the property.

10

<u>Priority Claims</u>

Ms. Hamrick's Proof of Claim indicates that she may be asserting a priority claim for a domestic support obligation under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).  The Proof of Claim provides that it is based upon "Breach of Contract, Spousal Support, Child Support, and Fraud" and that the amount is "to be determined by the Okaloosa County, Florida Court, Case No. 2020DR0923."

*Child Support*

Ms. Hamrick asserts that Debtor owes her child support under the Settlement Agreement. As indicated, this Court has recognized relief from stay to the Florida State Court to consider child support and visitation and domestication of the Judgment of Absolute Divorce.  The Florida State Court dismissed the other causes of action in the Complaint.  The remaining causes of action shall be determined by this Court under the Settlement Agreement as a prepetition contract under North Carolina contract law.

Regarding prepetition child support payment required by the Settlement Agreement, the evidence indicated that Debtor has paid those amounts in full.  However, Section Eleven of the Settlement Agreement provides that the amount designated for after school care of the minor children would be increased with each rank promotion received by Debtor "with the exact amount to be paid at that time to be determined between the parties."[12]  Upon Debtor's promotion to Major

---

[12]      Part III, Section Eleven, "ADDITIONAL PAYMENTS IN LIEU OF CHILD SUPPORT" provides:

> In addition, to those payments regarding the residence located in Florida as set forth above in Part II, Section Four, Husband shall be responsible for the cost of after-school care for the minor children (which currently averages $450 per month) except during the times they are in the custody of the Husband.  **These expenses shall be revised and increased with each rank promotion received by the Husband, with the exact amount to be paid at that time to be determined between the parties**.

> In addition, Husband shall give to the Wife Two Hundred Ninety Dollars ($290) per month beginning with the first month after the execution of this Agreement.

in 2014-2015, he testified that he negotiated an increase of all child support to $1500 but that Ms. Hamrick ultimately refused to sign the amended agreement representing that amount.  Therefore, as an increase in this instance of child support was not previously agreed to by the parties nor liquidated, no prepetition amount existed at the time of the bankruptcy filing.

However, it appears a contingent and unliquidated claim for child support based upon this section of the Settlement Agreement may exist. Since Ms. Hamrick's claim for child support in the Complaint filed in the Florida State Court sought both "restorative" and future child support, it appears that Ms. Hamrick may have an unliquidated, pre-petition claim for some increase in child support under this provision of the Settlement Agreement, which may be entitled to priority, unsecured status as a domestic support obligation under 11 U.S.C. §§ 101(14A) and 507(a)(1)(A).[13]  While it is unclear whether the determination of that amount will be addressed by the Florida State Court in connection with its child support determination, the Court will defer determination of a claim for prepetition child support in the form of after school childcare for minor children to remain open pending the ruling, if any, of the Florida State Court.  However, this Court will recognize that no prepetition child support is owed at this time due to Debtor's payments and the parties' mutual failure to agree on any increase and therefore allow confirmation

---

It is fully understood that these payments, along with the payments on the Wife's residence, are in lieu of child support and should the Wife apply for child support through the courts, these provisions shall become null and void and the Wife shall be entitled to guideline child support as figured under the North Carolina General Statutes.
(emphasis added).

[13]   The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title… that is—
(A) owed to or recoverable by—
(i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian or responsible relative…
(B) in the nature of alimony, maintenance, or support … of such spouse, former spouse, or child of the debtor, without regard to whether such debt is expressly so designated;
(C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—
(i) a separation agreement, divorce decree, or property settlement agreement….

of a plan to be considered with the condition that upon determination of any increased amount, the plan must be amended to address it.

*Spousal Support*

Ms. Hamrick's Proof of Claim also asserts a claim for spousal support in an unquantified amount. However, the Settlement Agreement includes a provision whereby Ms. Hamrick expressly "waives all claims and demands against [Debtor] for any type of spousal support and/or maintenance, including post separation support and alimony, as well as allowances for attorneys' fees and suit money…, it being understood that this settlement is a total and complete release of each party by the other of all such matters and charges whatsoever except as herein otherwise provided."  While Ms. Hamrick testified that her waiver of alimony and spousal support in the Settlement Agreement was conditioned upon the transfer of Montgomery GI Bill benefits to her by Debtor and her agreement to seek only 20% of Debtor's military retirement, the Court questions the accuracy of those statements.  Despite the thoroughness and particularity of the Settlement Agreement and cross references regarding other terms of their agreement, there is no reference in the Settlement Agreement to the waiver of alimony or spousal support being conditioned upon the receipt of those educational benefits. In addition, the Settlement Agreement includes a merger clause which states that "[t]his Agreement contains the entire understanding of the parties, and there are no representations, warranties, covenants or undertakings other than those expressly set forth herein." Evidence of prior or contemporaneous agreements which are inconsistent with a written contract that contains the complete agreement of the parties, as evidenced by a merger clause, is barred by the parol evidence rule under North Carolina law.  *See Employment Staffing Group, Inc. v. Little,* 777 S.E.2d 309, 313 (N.C. Ct. App. 2015) (noting that "North Carolina

recognizes the validity of merger clauses and has consistently upheld them"). Therefore, Ms. Hamrick's claim for prepetition spousal support or alimony is denied.

*Rescission for Fraud*

Ms. Hamrick asserted at the hearing and in her Florida Complaint that the Settlement Agreement should be rescinded based upon Debtor's fraudulent representations, including his representation that he would transfer the Montgomery GI Bill benefits to her and his representation that the Settlement Agreement would be incorporated into the judgment of divorce.

"A marital separation agreement is subject to the same rules pertaining to enforcement as any other contract." *Gilmore v. Garner*, 157 N.C.App. 664, 669, 580 S.E.2d 15, 19 (2003). Thus, like any other contract, a separation agreement may be set aside or reformed based on grounds such as fraud, mutual mistake of fact, or unilateral mistake of fact procured by fraud. *See Searcy v. Searcy*, 715 S.E.2d 853, 857 (N.C. Ct. App. 2011) ("Separation and property settlement agreements are contracts and as such are subject to rescission on the grounds of (1) lack of mental capacity, (2) mistake, (3) fraud, (4) duress, or (5) undue influence.")). The party seeking rescission on grounds of fraud or fraud in the inducement must show "(1) that defendant made a false representation or concealment of a material fact; (2) that the representation or concealment was reasonably calculated to deceive; (3) that defendant intended to deceive; (4) that plaintiff was deceived; and (5) that plaintiff suffered damage as a result from defendant's misrepresentation or concealment." *Claggett v. Wake Forest Univ.*, 126 N.C. App. 602, 610, 486 S.E.2d 443, 447 (1997). Additionally, the deceived party must have reasonably relied on the allegedly false representations. *Seraph Garrison, LLC v. Garrison*, 2016 N.C. App. LEXIS 384, *23 (N.C. Ct. App. Apr. 19, 2016) (citing *Forbis v. Neal*, 361 N.C. 519, 527, 649 S.E.2d 382, 387 (2007)).

The evidence presented at the hearing was insufficient to show that Debtor made any false representation to Ms. Hamrick in connection with the parties' negotiation and execution of the Settlement Agreement.  Regarding the Montgomery GI Bill benefits, Debtor testified that Ms. Hamrick could have obtained educational benefits prior to their divorce directly from the government without requiring his assistance.  There is no evidence indicating that Debtor made any representation to Ms. Hamrick that he would seek incorporation of the Settlement Agreement into the judgment of divorce and there was no reference to a requirement of incorporation in the Agreement itself. The testimony indicated that Debtor's lawyer provided Ms. Hamrick with several versions of the Settlement Agreement to allow her to provide input and changes and that she ultimately signed the Settlement Agreement in Florida outside of Debtor's presence and sphere of influence.  Furthermore, Part IV, Section Six of the Settlement Agreement provides:

> Each party acknowledges that this Agreement is fair and equitable, that it is being entered into voluntarily, that it is not the result of duress or undue influence, and that each party believes that both parties are capable of performing each and every obligation imposed upon them by this Agreement.

The Court further observes that Ms. Hamrick waited nearly six years after the divorce was final before she raised any concerns regarding her failure to receive educational benefits or the incorporation of the Settlement Agreement into the judgment of divorce, which could have been requested by either party.[14]

The Court further finds that Ms. Hamrick has failed to meet her burden of proof to establish fraud and that Debtor had no duty to disclose to Ms. Hamrick his knowledge, if any, regarding her eligibility for Montgomery GI Bill benefits because (1) there was no fiduciary relationship between the parties since they were separated and were adversaries negotiating over the terms of their

---

[14]     It appears Ms. Hamrick did not raise the incorporation concern at the time of the divorce, it appearing that she failed to appear and defaulted in the divorce action.

separation; (2) there is no evidence that Debtor affirmatively acted to conceal facts from Ms.

Hamrick; (3) Ms. Hamrick could have exercised reasonable diligence to identify whether the

educational benefits terminated upon divorce.[15] *Harton v. Harton,* 81 N.C. App. 295 (N.C. Ct.

App. 1986) (setting forth the three situations in which a duty to disclose arises).   While Ms.

Hamrick referred to being intimidated by Debtor to sign the Settlement Agreement, the Court finds

that the Agreement was signed separately—in fact, in different states—and doubts the existence

of intimidation under these circumstances.   Ms. Hamrick's election to proceed *pro se* in her divorce

action does not protect her from her failure to timely ensure that her rights were protected.   Under

North Carolina law, *pro se* litigants are entitled to consideration of their non-lawyer status, but

they are not entitled to be relieved of the applicable legal standards, rules of procedure, or

deadlines. *Weathers v. Ziko,* 113 F.Supp.3d 830 (M.D.N.C. 2015).

*Material Breach of Contract*

Ms. Hamrick asserted at the hearing and in her Florida Complaint that Debtor materially

breached the Settlement Agreement because certain provisions are contrary to Florida law and

policies, citing the topics of child support and military benefits, and because Debtor has not

complied with the property division provisions.

Initially, it is clear from the terms of the Settlement Agreement that North Carolina law,

not Florida law, controls the terms of the Agreement and its enforcement.   This has been

recognized not only by this Court but by the Florida State Court's dismissal of the causes of action

in the Complaint, other than child support and visitation, due to its lack of subject matter

---

[15]     The Montgomery GI Bill is codified in the U.S. Code under chapter 30 of title 38. "Generally speaking, a party cannot attack the making of a contract on the basis of fraud where the proof regarding the misrepresentation or misstatement relates to a matter of law. This is based primarily on the following related principles: "that everyone is equally capable of determining the law, is presumed to know the law and is bound to take notice of the law and, therefore, in legal contemplation, cannot be deceived by representations concerning the law or permitted to say he or she has been misled." *Dalton v. Dalton*, 164 N.C. App. 584, 586, 596 S.E.2d 331, 333 (2004) (citing Richard A. Lord, Williston on Contracts § 69:10 (4th ed.1993)).

16

jurisdiction.  Therefore, there is no material breach for failure to comply with Florida law regarding military benefits.

Regarding child support, this Court has determined that all amounts expressly stated in the Separation Agreement have been paid by Debtor.  To the extent an increase for after school care for minor children was due prepetition, the evidence indicates Debtor made significant efforts to reach an agreement regarding the amount, but those efforts were rejected by Ms. Hamrick.  Both parties are responsible for the failure to accomplish an increase in payments by agreement and Debtor cannot be held liable for a material breach based upon the failure to pay the alleged increase in child support.

Regarding property division, as indicated below, this Court finds Debtor has fully complied with all property division provisions and therefore is not in material breach of the Settlement Agreement.

For these reasons, Ms. Hamrick's cause of action based upon breach or material breach of the Settlement Agreement is disallowed.  The Court also observes that the Settlement Agreement contained in Part IV, General Provisions, Section Four "Partial Invalidity" the following provision:

> If any part or parts of this Agreement shall be rendered null and void or of no effect for any reason, all of the remaining parts of this Agreement, whether the same shall be considered executed or executory, shall remain in effect and binding upon the parties hereto and same shall not be considered to be revoked amended or invalidated.

Therefore, as the parties agreed, to the extent the Court finds a failure to perform a specific provision, it may enforce it or determine damages without invalidating the Settlement Agreement as a whole.

17

### Montgomery GI Bill Benefits

Ms. Hamrick also asserts a cause of action based upon Debtor's obligation to transfer

military educational benefits to her under the Settlement Agreement.  Part III, Section Twelve of

the Settlement Agreement, entitled "MISCELLANEOUS PROVISIONS," provides:

> It is understood and agreed that the Husband shall sign whatever documents,
> or take all steps that might be necessary, in order to allow the Wife to continue
> to receive benefits under the Montgomery GI Bill for so long as she might be
> eligible.

The Settlement Agreement appears to require Debtor to take some action to allow Ms. Hamrick to

receive some benefits under the Montgomery GI Bill.   At the outset, it is unclear from the evidence

presented what specific educational benefits were available and therefore within the contemplation

of the parties at the time of the execution of the Settlement Agreement or throughout its duration.

The testimony presented by both parties indicated that while Debtor took no action, he was not

requested to take any action to obtain benefits from the Montgomery GI Bill on behalf of Ms.

Hamrick.[16] Debtor testified that he believed no further action on his part was necessary and that

Ms. Hamrick was entitled to directly apply on her own.   While it is clear from the Settlement

Agreement that the parties intended for Ms. Hamrick to receive educational benefits at some point,

if eligible, the Court is unable to determine from the unclear testimony presented the extent of

benefits to which Ms. Hamrick may have been entitled to under this provision of their Settlement

Agreement.  Debtor testified that, with Ms. Hamrick's knowledge, he had waived all benefits from

the formal Montgomery GI Bill at the time he entered service in the Army because the couple

---

[16]      The Montgomery GI Bill provides eligible servicemembers with education assistance through monthly
stipends for up to 36 months. The Montgomery GI Bill also permits a servicemember to transfer up to 18 months of
unused education benefits to each individual dependent, such a spouse or child, under 38 U.S.C. § 3020 and 38 C.F.R.
§ 21.7080. Section 21.7135(gg) of the Code of Federal Regulations, which is made applicable to a dependent who has
received transferred entitlement to education benefits under the Montgomery GI Bill provides that "[i]f a spouse
eligible for transferred entitlement and the transferor divorce, the spouse's discontinuance date [for educational
assistance] is the date of the divorce."

could not afford the premium; but also testified that there were other benefits that Ms. Hamrick

may have been entitled to under the umbrella and naming convention of the Montgomery GI Bill

before she became ineligible upon the divorce.[17]    At this point, the evidence is insufficient to

determine the existence, nature, duration, or value of such benefits. However, finding that the

parties intended some type of educational benefits for Ms. Hamrick, the Court will leave open a

claim based upon this cause of action and will allow the parties to address it within the adversary

proceeding without shifting the burdens of proof.[18]

Military Retirement

Ms. Hamrick also seeks an increased "coverture" share of Debtor's military retirement

under Florida law.  As stated above, Florida law does not apply. Part III, Section Seven of the

Settlement Agreement, entitled "RETIREMENT, PENSION and 401K ACCOUNTS," provides:

> Both parties understand and agree that each may have accumulated during
> the course of the marriage certain retirement, pension, 401(k) or similar
> accounts. The parties understand and agree that each party shall be the sole and
> separate owner of all such accounts in that party's name.  Each party agrees to
> sign any documents or other instruments which might be necessary to release
> their interest in those said accounts in the other's name.   However, it is
> understood and agreed that the Wife will receive twenty percent (20%) of the
> amount of retirement received by Husband from the Army as determined from
> his rank of Captain.  Wife will not be entitled to this retirement if she is married
> at the time she becomes eligible to draw from this retirement.

---

[17]    Debtor testified regarding another military educational benefit program, the Post 9/11 GI Bill, which he stated
went into effect after their Settlement Agreement.  However, it appears that the Post 9/11 GI Bill (38 U.S. § 3301, *et
al.*) became effective on August 1, 2009, prior to the execution of their Settlement Agreement, and this GI Bill does
not appear to contain a discontinuance upon divorce provision. The Post 9/11 GI Bill provides educational assistance
to servicemembers through the direct payment of tuition to educational institutions and a monthly housing allowance.
Like the Montgomery GI Bill, the education benefits under the Post 9/11 GI Bill may be transferred to dependents,
including the servicemembers' spouse. *See* 38 U.S.C. § 3319. However, the regulations of the Post 9/11 GI Bill do
not expressly provide a discontinuance of benefits upon a divorce. *See* 38 C.F.R. § 21.9635. As noted by one
commentator, "Education benefits [under the Post 9/11 GI Bill] that have been transferred to a spouse are not
automatically revoked by a subsequent divorce." Amy L. Snyder, *Military Benefits and Divorce,* 47 APR Md. B.J. 30,
35 (Mar./Apr. 2014).  As a result, it appears a servicemember and divorcing spouse could voluntarily agree to the
continuance of transferred benefits under the Post 9/11 GI Bill after a divorce.
[18]    Stated differently, Ms. Hamrick will continue to have the burden of proof to establish the amount and validity
of her claim in the adversary proceeding.

19

In addition, Husband will take such action as might be necessary to transfer to the Wife the entire Mutual IRA currently in his name. Husband will sign any and all documentation necessary to effectuate this transfer.

The Settlement Agreement appears to provide for Ms. Hamrick to receive twenty (20%) of the amount of retirement received by the Husband from the Army as determined from his rank of Captain. It further provides that Ms. Hamrick "will not be entitled to this retirement if she is married at the time she becomes eligible to draw from this retirement." As provided in the Settlement Agreement, interpretation of this provision shall be made under North Carolina law. This matter presents several issues which require more information from the parties to be resolved:

1. Whether Ms. Hamrick has a vested property interest in Debtor's military retirement applicable at the time of the execution of the Settlement Agreement or merely a contingent right to receive a portion of any retirement benefits when received by Debtor;

2. Whether the parties' failure to incorporate the Settlement Agreement into the Judgment for Divorce implicates the anti-assignment provision of 37 U.S.C. § 701(c);[19]

3. Whether the parties intended for Ms. Hamrick to receive direct payment from Defense Finance & Accounting Service (DFAS) or from Debtor;

4. Whether Ms. Hamrick's request to increase the percentage of retirement received is barred by N.C. Gen. Stat. Ann. § 50-11 (providing that a judgment of absolute divorce destroys the right of a spouse to equitable distribution unless the right is asserted (by the filing of an action or raising of counterclaims) prior to judgment of absolute divorce); and

---

[19]      37 U.S.C. § 701(c) provides that "[a]n enlisted member of the Army, Navy, Air Force, or Marine Corps may not assign his pay, and if he does so, the assignment is void." An exception to this statute appears to be provided with respect to the payment of retirement pay to former spouses *by court order* under the Uniformed Services Former Spouses Protection Act, codified at 10 U.S.C. § 1408.

5.    Any other related issues deemed relevant to this determination by the parties' counsel.

The Court will determine this portion of Ms. Hamrick's claim in connection with the

adversary proceeding without the shifting of burdens of proof.

<u>Niceville, Florida Property</u>

Part III, Section Six of the Settlement Agreement, entitled "REAL PROPERTY,"

provides:

> With regard to the Niceville, Florida residence, it is understood and agreed that the Wife shall be entitled to the exclusive use and possession of said residence for so long as she might wish.  Should Wife decide to move from said residence, the Husband shall be entitled to use and possession of the residence or to rent the residence and keep all of the rental proceeds after payment of the costs of sale and any other debts or obligations owing on said residence.

> As part of the Husband's child support payment he shall continue to pay the mortgage, taxes, insurance, home warranty, repair and maintenance on said Niceville, Florida property.  Should the Wife move from this residence, the Husband shall continue to be responsible for said payments but shall also be entitled to collect any rents or other profits associated with this residence.  However, should the Wife request child support through the courts while still remaining in said residence, then the provisions regarding the Husband's payments on this residence shall become null and void.

*Rental Proceeds*

The Florida Court Complaint filed by Ms. Hamrick asserts causes of action for unjust

enrichment and conversion based upon Debtor's retention of rental proceeds received from the

Niceville, Florida property after Ms. Hamrick vacated the property in October of 2015.  "In North

Carolina, to recover on a claim of unjust enrichment, Plaintiff must prove: (1) that it conferred a

benefit on another party; (2) that the other party consciously accepted the benefit; and (3) that the

benefit was not conferred gratuitously or by an interference in the affairs of the other party."

*Southeastern Shelter Corp. v. BTU, Inc.,* 572 S.E.2d 200, 206 (N.C. Ct. App. 2002). "To prevail

on a conversion claim, a plaintiff must prove the following two essential elements: (1) ownership

of a thing vested in the plaintiff and (2) a wrongful conversion of the thing by the defendant."
*Flexible Foam Products, Inc. v. Vitafoam Inc.,* 980 F. Supp.2d 690 (W.D.N.C. 2013).

Ms. Hamrick does not allege or provide evidence that she conferred a benefit on Debtor regarding the rental proceeds. Instead, she alleges Debtor received rental proceeds from a third party and retained them for himself. Ms. Hamrick asserts that she is entitled to half of the rental income from the leasing of this property. However, the Settlement Agreement plainly provides that, upon her move, "the Husband shall be entitled to use and possession of the residence or to rent the residence and keep all of the rental proceeds."

There is no evidence indicating that Ms. Hamrick had an ownership interest in the rental proceeds to support a claim for conversion. The Settlement Agreement indicates that the Niceville, Florida property was titled solely in the name of Debtor. The evidence indicates that Ms. Hamrick moved from the property in October of 2015 and Debtor rented the property and retained the rental proceeds in accordance with the terms of the Settlement Agreement. Debtor further testified that the property was sold approximately two years later and the parties divided the proceeds in accordance with the Settlement Agreement. The Florida State Court dismissed the unjust enrichment cause of action without prejudice. Ms. Hamrick presented no testimony or other evidence to dispute the enforceability of this provision of the Settlement Agreement.

Based on the plain language of the Settlement Agreement and the evidence presented, the Court is unable to conclude that Ms. Hamrick has a claim for unjust enrichment or conversion based upon Debtor's retention of rental proceeds for the Niceville, Florida property. Accordingly, Ms. Hamrick has failed to meet her burden of proof to demonstrate a claim based upon Debtor's failure to transfer one-half of the rental proceeds for the Niceville, Florida property and thus this cause of action is disallowed.

22

*Conversion of Personal Property*

The Florida Court Complaint also includes a cause of action against Debtor for conversion of personal property from the Niceville, Florida property.  Ms. Hamrick alleges that Debtor instructed the property management company to dispose of her personal property that she had left in the garage without consulting her.

The Settlement Agreement provides that "all of the personal property located in the home of the parties located in Niceville, Florida shall be the sole and separate property of the Wife." Based upon the evidence presented, the Court finds Ms. Hamrick was on full notice to timely remove her personal property from the Niceville, Florida property after she had changed her residence and vacated that property.

Further, while the Complaint alleges that the value of those items left after her move was $3,403.23 and references an "Exhibit B," which allegedly provides a list of the items and their value, this exhibit was not attached to the Proof of Claim and was not introduced into evidence. Ms. Hamrick testified that the items included some fine china purchased in Italy and her daughter's piggy bank.[20] She did not testify as to the purchase price of the china or the value of the piggy bank, nor did she testify to confirm the $3,403.23 value alleged in the Complaint. No other evidence was presented to establish the value of these items.   The Court is unable to determine the amount of Ms. Hamrick's claim based on the admissible evidence presented regarding her claim based upon Debtor's alleged conversion of personal property from the Niceville, Florida property.  *See* 11 U.S.C. § 502(b) ("[I]f any objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition….").  Accordingly, the Court finds that Ms. Hamrick has

---

[20]    Debtor testified that Ms. Hamrick was on full notice to remove her property, having been requested to do so several times in writing.

failed to meet her burden of proof to demonstrate the amount of her claim and disallows this part of her claim.

*Conversion of Personal Funds for Unreimbursed Expenses*

Ms. Hamrick also asserts a cause of action against Debtor for conversion of personal funds for unreimbursed expenses related to the Niceville, Florida property.  The Florida State Court Complaint alleges that Ms. Hamrick used her personal funds for paint, painting supplies, wallpaper removal supplies and light sockets in the sum of $520 for repairs to the Niceville, Florida property, which solely benefited Debtor.  Ms. Hamrick alleges that Debtor failed to reimburse her for these expenses in accordance with the Settlement Agreement.[21]  No testimony or other evidence was presented by either party at the hearing regarding this cause of action.  Debtor testified that the Niceville, Florida property was sold and the proceeds of the sale were divided between them.  The evidence indicates that both parties benefited from the sale of the property.  Due to the lack of evidence supporting the cause of action, the Court finds that Ms. Hamrick has failed to meet her burden of proof of demonstrating the amount of her claim and therefore disallows this part of her claim.

Fayetteville, North Carolina Property

Part III, Section Six of the Settlement Agreement, entitled "REAL PROPERTY," further provides:

> With regard to the Fayetteville, North Carolina residence, it is understood and agreed that the Husband shall be entitled to the exclusive use and possession of said residence (including the rental of said residence) and that he shall be responsible for all debts and other obligations associated with said residence. However, it is further understood and agreed that should the Husband ever sell said residence, then the Wife would be entitled to one-half (1/2) of the net proceeds after payment of the costs of sale and any other debts or obligations owing on said residence.  Prior to sale, the Husband shall be responsible for all

---

[21]    The Settlement Agreement provides that "as part of Husband's child support payment he shall continue to pay the mortgage, taxes, insurance, home warranty, repair and maintenance on said Niceville, Florida property."

> debts and other obligations associated with said residence, including but not limited to, mortgage, insurance, taxes, maintenance and upkeep, as well as being entitled to any rents and profits from said residence.

Ms. Hamrick alleges in her Florida Court Complaint a claim for constructive fraud by breach of fiduciary duty based upon Debtor's refinancing of the Fayetteville, North Carolina Property. Ms. Hamrick claims that the refinancing adversely affected her net equity in the property. This claim was dismissed by the Florida State Court with prejudice because it involved property in North Carolina.

Under North Carolina law, the claims of breach of fiduciary duty and constructive fraud are separate claims, even though they involve overlapping elements. *BDM Investments v. Lenhil, Inc.,* 826 S.E.2d 746, 760 (N.C. Ct. App. 2019). To recover for constructive fraud, a plaintiff must establish the following:

> The existence of circumstances (1) which created the relation of trust and confidence, and (2) [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust. Further, an essential element of constructive fraud is that [the defendant] sought to benefit themselves in the transaction. The primary difference between pleading a claim for constructive fraud and one for breach of fiduciary duty is the constructive fraud requirement that the defendant benefit himself. In order to satisfy this requirement, [the plaintiff's] evidence must prove defendants sought to benefit themselves or to take advantage of the confidential relationship.

*Id.* (quoting *Trillium Ridge Condo. Ass'n v. Trillium Links & Vill.,* 764 S.E.2d 203, 219 (2014)). "During a marriage, a husband and wife are in a confidential relationship [and therefore they] have a duty to disclose all material facts to one another, and the failure to do so constitutes fraud." *Searcy v. Searcy,* 715 S.E.2d 853, 857 (N.C. Ct. App. 2011) (*citing Sidden v. Mailman,* 563 S.E.2d 55, 58 (N.C. Ct. App. 2002). "However, the fiduciary duty ends when the parties separate and become adversaries negotiating over the terms of their separation." *Id.* At the time of the refinancing transaction, Debtor and Ms. Hamrick were divorced and there was no longer a

25

confidential relationship between the parties.  Ms. Hamrick has failed to present evidence demonstrating an existence of a fiduciary duty to support a claim for constructive fraud.

Moreover, Debtor testified that the refinancing was authorized by Ms. Hamrick and she signed the mortgage and other closing documents to finalize the transaction.  Therefore, she should have known or had the opportunity to know about the transaction. Furthermore, there is no evidence that Debtor benefited from the transaction to the detriment of Ms. Hamrick.  Debtor testified that the refinancing was done solely to lower the interest rate and monthly payment on the mortgage and he did not receive any funds as a result of the refinancing transaction.  Debtor also testified that there is presently no equity in the property and he intends to surrender the property to the mortgage company as part of his chapter 13 plan. Ms. Hamrick did not contradict this testimony.[22]  Based on the evidence presented, the Court finds that the evidence does not support a cause of action against Debtor for constructive fraud or breach of fiduciary duty. Therefore, this cause of action is disallowed. However, it appears that Ms. Hamrick continues to have a one-half interest in the Fayetteville, North Carolina property and therefore, she may take action to protect that interest in connection with any sale or foreclosure action regarding that property.

---

[22] The Proof of Claim filed by the mortgage creditor for the Fayetteville, NC property includes copies of the Deed of Trust, Adjustable Rate Ride, VA Guaranteed Loan and Assumption Policy Rider, and 1-4 Family Rider, which were signed Ms. Hamrick on December 18, 2014.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Debtor's Objection to Claim is sustained in part and deferred in part:[23]

(1) To the extent Ms. Hamrick asserts a secured claim, her claim is disallowed;

(2) To the extent Ms. Hamrick asserts a priority prepetition claim for child support, such claim is denied except to the extent that it is determined that Ms. Hamrick has an unliquidated, prepetition claim for child support for after school care for the minor children due to Debtor's rank increase under the terms of the Settlement Agreement, which may be offset by any overpayment. A ruling on that portion of the claim is deferred.   Since this sole issue of this contingent prepetition support is not yet determined, this Court will proceed with consideration of confirmation of the plan with the requirement of amendment if necessary upon its determination;

(3) To the extent Ms. Hamrick asserts a claim based upon Debtor's obligation to transfer military educational benefits to her, the Court will defer its determination of the cause of action and the existence and amount of any claim asserted therein as well as its status as priority or unsecured in connection with the adversary proceeding in order to allow

---

[23]     In the Florida Complaint, Ms. Hamrick also asserts a cause of action for "Amendment of Trust" regarding a guardianship and trust she alleges was established by Debtor for their daughter regarding funds received on her behalf for a medical neglegence settlement.  Ms. Hamrick seeks to be added to the Guardianship and appointment as co-trustee for the funds.  She also seeks an annual accounting for the trust.  The cause of action was dismissed by the Florida State Court without prejudice.  While it appears the Settlement Agreement provided for a split of these funds between Debtor and Ms. Hamrick (40% to Debtor and 60% to Ms. Hamrick), Ms. Hamrick did not assert a breach of this provision of the Settlement Agreement and neither party raised any issues regarding the trust in their pleadings or during the hearing on the Objection to Claim.  Accordingly, the Court is unable to address the trust in this bankruptcy case because Ms. Hamrick's cause of action in the Florida court seeks only non-monetary relief and Ms. Hamrick's claim is limited to what she alleged in the Florida Court Complaint.  The Court cannot look elsewhere to find a breach where none has been alleged.  Accordingly, any such claim is disallowed.  Nevertheless, upon motion, the Court would consider granting relief from stay to allow Ms. Hamrick to file an action in an appropriate court to seek an accounting of the trust and to seek to be added to the Guardianship and appointment as co-trustee.

the parties an opportunity to complete discovery and present further evidence regarding the educational benefits;

(4) To the extent Ms. Hamrick asserts cause of action for alimony and/or spousal support, such claims were waived by Ms. Hamrick in the Settlement Agreement and are therefore disallowed;

(5)   To the extent Ms. Hamrick asserts a cause of action for an increased "coverture" share of Debtor's military retirement benefits under Florida law, such claim is disallowed. However, the Court will defer its determination of the claim to obtain more information through the adversary proceeding and after allowing the parties an opportunity to complete discovery and present further evidence regarding the following issues:

    a.   Whether Ms. Hamrick has a vested property interest in Debtor's military retirement by virtue of the Settlement Agreement or merely a contingent right to receive a portion of the retirement benefits when received by Debtor;

    b.   Whether the parties' failure to incorporate the Settlement Agreement into the Judgment for Divorce implicates the anti-assignment provision of 37 U.S.C. § 701 such that Ms. Hamrick is unable to obtain her share of Debtor's retirement benefits directly from Defense Finance & Accounting Service (DFAS);

    c.   Whether the parties intended for Ms. Hamrick to receive direct payments from DFAS or from Debtor;

    d.   Whether Ms. Hamrick's request to increase the percentage of retirement received is barred by N.C. Gen. Stat. Ann. § 50-11 (providing that a judgment of absolute divorce destroys the right of a spouse to equitable distribution unless

the right is asserted (by the filing of an action or raising of counterclaims) prior to judgment of absolute divorce); and

    e.   Any other related issues deemed relevant to this determination by the parties' counsel.

(6) To the extent Ms. Hamrick asserts a cause of action for rental proceeds received by Debtor for the Niceville, Florida property, this claim is disallowed.

(7) To the extent Ms. Hamrick asserts a cause of action for conversion of personal property from the Niceville, Florida property, this claim is disallowed.

(8) To the extent Ms. Hamrick asserts a cause of action for conversion of personal funds for unreimbursed expenses related to the Niceville, Florida property, this claim is disallowed.

(9) To the extent Ms. Hamrick asserts a cause of action for constructive fraud or breach of fiduciary duty based upon Debtor's refinancing of the Fayetteville, NC property, this claim is disallowed.  However, the Court will, upon request, grant relief from stay if agreed to by the parties to allow Ms. Hamrick to take action to protect her one-half interest in the Fayetteville, NC property.

**AND IT IS SO ORDERED.**